UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

ROBERT BRANDON,                     )
                                    )
            Plaintiff,              )
                                    )
      v.                            )      No. 2:20-cv-00572-JPH-MG
                                    )
L. MILLER, et al.,                  )
                                    )
            Defendants.             )

**Order Granting Defendants' Motion for Partial Summary Judgment for
Failure to Exhaust Administrative Remedies**

Robert Brandon is an inmate at Wabash Valley Correctional Facility. In
this civil rights action brought under 42 U.S.C. § 1983, Mr. Brandon alleges that
the defendants retaliated against him for filing grievances and denied him Due
Process at a disciplinary hearing.

The defendants argue that they are entitled to summary judgment on the
retaliation claims because Mr. Brandon did not exhaust administrative remedies
with respect to those claims. Mr. Brandon has responded in opposition to the
motion for summary judgment, and the defendant has replied. Because the
evidence shows that Mr. Brandon failed to exhaust administrative remedies with
respect to the retaliation claims, the motion for summary judgment is **granted**.

## I.      Summary Judgment Standard

A motion for summary judgment asks the Court to find that there is no
genuine dispute as to any material fact and, instead, the movant is entitled to
judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts
that a fact is undisputed or genuinely disputed, the party must support the

asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3); *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 787 (7th Cir. 2019) (district judges may strictly enforce local summary-judgment rules); dkt 30 (notifying Mr. Brandon of the consequences of not responding to the motion for summary judgment with evidence).

## II.   Background

Mr. Brandon alleges that he filed grievances regarding being removed from his job and placed in a disciplinary restricted housing unit. He further alleges that the defendants retaliated against him by charging him with false conduct

reports resulting in him not being permitted to move out of the restricted housing unit and denial of his state court request for a sentence modification.

## A. The Grievance Process

The Indiana Department of Correction ("IDOC") has an Offender Grievance Process ("the Grievance Process") that provides inmates with a process for resolving issues and complaints about aspects of prison life. Dkt. 28-1 at ¶¶ 6−7. Staff retaliation is a grievable issue. Dkt. 28-2 at 3; dkt. 28-1 at ¶ 24. Inmates receive documentation on the Grievance Process during orientation, and a copy of the Offender Grievance policy is available in the Wabash Valley law library. Dkt. 28-1 at ¶ 12.

The Grievance Process in effect at the time of the incident consisted of the following steps: (1) a formal attempt to resolve a problem or concern following an unsuccessful attempt at an informal resolution; (2) a written appeal to the facility warden or the warden's designee; and (3) a written appeal to the IDOC Grievance Manager. Dkt. 28-2 at 3. Exhaustion of the grievance process requires an inmate to timely complete all three steps. Dkt. 28-1 at ¶ 11.

The inmate must document the formal grievance using an Offender Grievance Form (State Form 45471) and submit it to the grievance specialist within ten days of the incident. *Id.* at ¶ 16; dkt. 28-2 at 9. The grievance specialist must return an unacceptable form or a receipt for an accepted form within ten business days of receiving the grievance. Dkt. 28-2 at 10. If the inmate receives no grievance response within twenty business days of the grievance specialist's

receipt of the grievance, he may appeal as though the grievance has been denied. *Id.* at 11.

If an inmate is not satisfied with a grievance response, he must file an appeal to the warden or his designee within five business days after the date of the grievance response. *Id.* at 12. If the inmate is dissatisfied with the warden's response, he must file an appeal to the IDOC Grievance Manager within five business days of receiving the warden's response. *Id.* at 12.

### B. Mr. Brandon's Use of the Grievance Process

Tawni Templeton is the grievance specialist at Wabash Valley. Dkt. 28-1 at ¶ 2. She oversees the Grievance Process and has access to grievance records at the prison. *Id.* at ¶ 4. She reviewed Mr. Brandon's grievance records. *Id.* at ¶ 23. Her review indicated that Mr. Brandon filed no grievances related to staff retaliation. *Id.*; *see also*, dkt. 28-4 (Mr. Brandon's grievances).

In response, Mr. Brandon argued that he filed many grievances using the Ombudsman Bureau App on his tablet. Dkt. 49 at 1–2. However, he could not obtain copies of the grievances because "[a]ll documents on the offender tablet system are closed and can't be reopened to be reviewed once the request, complaint, or grievance is sent through the offender tablet system[,]" and Mr. Brandon was unable to procure copies of them through a third-party subpoena. *Id.* at 2.

### III.   Discussion

The Prison Litigation Reform Act ("PLRA") provides, "No action shall be brought with respect to prison conditions under section 1983 . . . until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; *see Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006) (citation omitted).

Exhaustion of available administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90. "To exhaust available remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020). Exhaustion is an affirmative defense, and the defendant bears the burden of demonstrating that the plaintiff failed to exhaust all available administrative remedies before he filed this suit. *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

"The exhaustion requirement, however, 'hinges on the availab[ility] of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.'" *Reid*, 962 F.3d at 329 (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). A grievance process may be unavailable if the prison fails to respond to an inmate's grievance, making the process unavailable. *Id.* It may also be unavailable if the process is "so opaque that it becomes,

5

practically speaking, incapable of use." *Ross*, 578 U.S. at 643. For the process

to be opaque, the rules must be so confusing that no reasonable prisoner could

follow them. *Id.* at 644.

Here, it's undisputed that inmates at Wabash Valley must submit a formal

grievance on a Form 45471 to the Grievance Specialist:

> An offender wanting to submit a grievance on an issue that he/she has
> been unable to resolve informally as outlined in Section X shall submit a
> completed State Form 45471, "Offender Grievance," no later than ten (10)
> business days from the date of the incident giving rise to the complaint or
> concern to the Offender Grievance Specialist.

Dkt. 28-2 at 9. Defendants' designated evidence shows that Mr. Brandon did not

submit a Form 45471 regarding alleged retaliation to the Grievance Specialist.

Dkt. 28-1 at 5, ¶ 23; dkt. 28-4. And Mr. Brandon does not claim that he did so,

nor does he argue that the grievance process was unavailable to him. Dkt. 49.

Instead, he responds to Defendants' motion for summary judgment by stating

that on numerous occasions he filed a grievance "using the Ombudsman Bureau

App on the offender tablet . . . " *Id.* at 1.

But Mr. Brandon has designed no evidence showing that "using the

Ombudsman Bureau App on the offender tablet" satisfies, or may be done in lieu

of, the requirement that any grievance must be submitted on a Form 45471 to

the Grievance Specialist.  Dkt. 49. Taking Mr. Brandon's statements in the light

most favorable to him, that is assuming that he submitted a series of grievances

"using the Ombudsman Bureau App on the offender tablet", no jury could

reasonably find that this satisfied the requirement that any formal grievance

must be submitted on a Form 45471 to the Grievance Specialist.  Therefore, no

jury could reasonably find that Mr. Brandon complied "strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid*, 962 F.3d at 329; *see also Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) ("'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)); *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004) ("[T]o exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system."). Accordingly, Defendants' motion for partial summary judgment must be **granted**.

## IV. Conclusion

Defendants Logan Miller, Mark Shroyer, Aaron Benefiel, Steven Cazee, Robert Mrazik, Cassandra Parr, Jodeana Raney, Esmeralda Tovar, and Robert Brochin's motion for partial summary judgment, dkt. [28], is **granted**. All First Amendment retaliation claims are **dismissed without prejudice**. Mr. Brandon's motion for a *Pavey* hearing, dkt. [48], is **denied as moot**.

The **clerk is directed to terminate** Logan Miller, Mark Shroyer, Steven Cazee, Robert Mrazik, Jodeana Raney, Esmeralda Tovar, and Robert Brochin as defendants on the docket. No final judgment shall issue.

The case proceeds with Mr. Brandon's Fourteenth Amendment due process claim against Cassandra Parr and Aaron Benefiel. A pretrial schedule will issue by separate order.

**SO ORDERED.**

Date: 9/13/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

ROBERT BRANDON
224231
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

All Electronically Registered Counsel